UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDRE LUIZ COSTA SOARES,

    Plaintiff,

v.                                          Case No: 6:24-cv-2153-JSS-RMN

UNITED STATES DEPARTMENT
OF STATE, UNITED STATES
CONSULATE GENERAL IN SAO
PAULO, BRAZIL, MARCO RUBIO,
and WILLIAM ASTILLERO,

    Defendants.
_____/

## ORDER

Defendants, the United States Department of State, the United States Consulate General in Sao Paulo, Brazil, Secretary of State Marco Rubio, and American Citizen Services Chief William Astillero, move to dismiss this case for lack of subject matter jurisdiction. (Dkt. 42.) Plaintiff, Andre Luiz Costa Soares, proceeding pro se, opposes the motion, (Dkt. 45), and moves for preliminary injunctive relief, (Dkt. 46). Defendants oppose Plaintiff's motion. (Dkt. 47; *see* Dkts. 50, 50-1.) On October 1, 2025, the court held an evidentiary hearing on the motions over Zoom. (*See* Dkt. 63.) Upon consideration, for the reasons outlined below, the court grants Defendants' motion, denies Plaintiff's motion, and dismisses this case without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

In his complaint, Plaintiff alleges that although he was born and raised in Brazil, he acquired United States citizenship at birth because his biological mother, Fawn Clark Taylor, was a United States citizen born and raised in the United States. (Dkt. 1 at 5; *see* Dkts. 1-1, 1-2 (Ms. Taylor's birth certificate and school records).) Plaintiff further alleges that based on DNA results, a court in Brazil amended his birth certificate in January 2022 to add Ms. Taylor as his biological mother. (Dkt. 1 at 5–6; *see* Dkts. 1-4 to 1-7.) According to Plaintiff, his birth certificate still lists the woman who raised him, Maria de Lourdes Costa Soares, as well, but it describes her as his social-affective mother rather than his biological mother. (Dkt. 1 at 5, 8.) Plaintiff claims that in April 2024, he visited the United States Consulate General in Sao Paulo, Brazil, to apply for a United States passport based on his United States citizenship, and in July 2024, the consulate denied his application because "Plaintiff did not present satisfactory evidence of the required biological relationship between him and" Ms. Taylor. (*Id.* at 6–7.) Plaintiff reports that his April 2024 DNA specimen had been mislabeled "Alexandre" instead of "Andre." (*Id.* at 7; *see* Dkt. 1-10 at 2.) The denial of Plaintiff's passport application purportedly prompted him to domesticate the Brazilian decree through a Florida state court in October 2024. (Dkt. 1 at 6; *see* Dkt. 1-8.) In November 2024, Plaintiff claims, he returned to the consulate with the domesticated decree to renew his passport application, and he interviewed with Mr. Astillero. (Dkt. 1 at 7.) Reportedly, during the interview, Mr. Astillero exhibited "rude and unprofessional conduct[]" and stated that he was "under no obligation" to

accept or obey the decree. (*Id.*) According to Plaintiff, Mr. Astillero also indicated that the Board of Immigration Appeals had questioned a DNA result dated May 2, 2022, because Plaintiff did not look like the "person in the picture for the DNA test." (*Id.* at 8.)

Plaintiff initiated this case in November 2024 with three counts against Defendants: violation of the Administrative Procedure Act (APA) under 5 U.S.C. §§ 701–706 (count one), writ of mandamus under 28 U.S.C. § 1361 (count two), and preliminary injunctive relief (count three). (Dkt. 1 at 9–12.) Count one asserts that under their own internal policies, Defendants cannot require Plaintiff to undergo additional DNA testing and that Defendants' actions inquiring into Plaintiff's DNA testing have been "arbitrary, capricious, in abuse of [their] discretionary powers, and . . . not in accordance with" the Immigration and Nationality Act. (*Id.* at 9.) Count one further asserts that "Plaintiff has suffered and continues to suffer a legal wrong as a result of [the Department of State]'s unreasonable delay in approving [his] United States passport application [by] requiring him to undergo DNA tests again." (*Id.* at 10.) Count two alleges that the Department of State owes Plaintiff a duty to issue him a United States passport given his automatic acquisition of United States citizenship at birth through Ms. Taylor. (*Id.* at 10–11.) Count two asks the court to exercise its mandamus authority to compel the Department of State to fulfill this duty. (*Id.*) Count three seeks a temporary restraining order (TRO) or preliminary injunction to "prohibit Defendants from asking again for a DNA test" and to require Defendants to immediately issue Plaintiff an emergency United States passport. (*Id.* at 11.) In a

- 3 -

prayer for relief after the counts, Plaintiff repeats the request for preliminary injunctive relief asserted in count three and asks that the court "[p]ermanently enjoin Defendants from causing [him] further harm . . . by ordering [the Department of State] to approve [his] application for a United States passport." (*Id.* at 13.)

In June 2025, Defendants filed the instant motion to dismiss. (Dkt. 42.) In the motion, Defendants state that "[i]n 2023, Plaintiff filed petitions with the Ninth Circuit Court of Appeals, alleging that he acquired citizenship through [Ms.] Taylor." (*Id.* at 4.) Defendants report that the Ninth Circuit consolidated these proceedings and transferred the action to the Central District of California (*Soares v. Bondi*, Case No: 5:24-cv-1276-TJH-PVC) for a de novo determination of Plaintiff's citizenship. (*Id.*) A review of the docket shows that the California action is ongoing. Defendants also state that Plaintiff entered the United States in December 2014, failed to leave by his December 25, 2015 deadline, was taken into the custody of United States Immigration and Customs Enforcement in May 2019, and was removed from the United States to Brazil in September 2023. (*Id.* at 3, 5.) In response to Defendants' motion, Plaintiff filed the instant motion for preliminary injunctive relief. (Dkt. 46.) In the motion, Plaintiff largely reiterates the allegations in his complaint and seeks the relief requested through count three. (*See id.*)

During the October 1, 2025 hearing on the motions, the parties made preliminary remarks, Plaintiff testified as the only witness, and the parties presented argument. The court permitted Plaintiff to testify in a narrative form given his pro se status. Plaintiff testified remotely from Brazil. During his testimony, he admitted

- 4 -

twenty-one exhibits into evidence, including Ms. Taylor's birth certificate and school records, the Brazilian decree and Florida domestication order, Plaintiff's amended birth certificate, letters from Defendants regarding his citizenship claim, his father's marriage and death certificates, documents describing Defendants' internal policies on DNA testing, Plaintiff's new Brazilian identification and passport, Department of State regulation 22 C.F.R. § 51.60 on the denial and restriction of passports, and webpages from Defendants about authentication and United States citizenship and passports. (*See* Dkts. 57-1, 64.) Defendants objected to five proffered exhibits—four affidavits, as well as an email from the DNA testing laboratory—on hearsay and authentication grounds. The court admitted the unobjected-to exhibits and invited Plaintiff to discuss the objected-to exhibits further, but Plaintiff did not argue against Defendants' objections. Defendants admitted seven exhibits: Plaintiff's entire Alien File (under seal), photographs of Plaintiff, Plaintiff's removal documents (including the warrant of removal and the warning regarding the removal), letters from the Department of State denying Plaintiff's passport applications and requesting DNA evidence of the biological relationship between Plaintiff and Ms. Taylor, and a court order in the California action requiring Plaintiff to submit to additional DNA testing. (*See* Dkts. 65 to 67.) Plaintiff did not object to these exhibits when they were offered into evidence.

## APPLICABLE STANDARDS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking federal jurisdiction must

establish subject matter jurisdiction by a preponderance of the evidence. *See Smith v. United States*, 14 F.4th 1228, 1230 (11th Cir. 2021) ("The burden of establishing that a claim falls within [the court's] jurisdiction 'rests upon the party asserting jurisdiction.'" (quoting *Kokkonen*, 511 U.S. at 377)); *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1363–64 (11th Cir. 2018) ("The party seeking federal jurisdiction must prove, by a preponderance of the evidence, facts supporting the exercise of jurisdiction."). Challenges to subject matter jurisdiction can be facial or factual. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). Facial challenges require the court to accept the complaint's well-pleaded factual allegations as true when determining whether subject matter jurisdiction exists. *Id.* In contrast, factual challenges require the court to look beyond the pleadings and to weigh evidence to decide the jurisdictional issue. *Id.*; *see Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1238 (S.D. Fla. 2021) ("When considering a facial attack, the court 'must consider the allegations of the complaint to be true,' whereas when considering a factual attack, 'no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990))). If the court lacks subject matter jurisdiction, it must dismiss the case without prejudice. *See McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021) ("If subject[ ]matter jurisdiction does not exist, dismissal must be without prejudice.").

Federal Rule of Civil Procedure 65 governs preliminary injunctive relief: TROs

and preliminary injunctions. *See* Fed. R. Civ. P. 65. Whereas TROs may issue without notice to the adverse party, *see* Fed. R. Civ. P. 65(b)(1), "[t]he court may issue a preliminary injunction only on notice to the adverse party," Fed. R. Civ. P. 65(a)(1). "Every order granting an injunction and every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "A TRO or preliminary injunction is appropriate where the movant" satisfies four requirements: (1) "there is a substantial likelihood of success on the merits," (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non[]movant," and (4) "the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). Preliminary injunctive relief "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

Although courts "give liberal construction" to documents filed by pro se plaintiffs, *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), pro se plaintiffs are still "required . . . to conform to procedural rules," *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). *See Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1234 n.10 (11th Cir. 2014) ("The right of self-representation does not exempt a party from compliance with

relevant rules of procedural and substantive law." (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981))). Further, the leniency with which courts treat pro se plaintiffs does not permit courts to "serve as de facto counsel" or "rewrite an otherwise deficient pleading." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## ANALYSIS

According to Defendants, the court lacks subject matter jurisdiction over counts one and two because Plaintiff has adequate alternative remedies to these counts, and count three does not advance an independent cause of action. (Dkt. 42 at 8–13, 15–16.) The court agrees; therefore, it grants Defendants' motion, denies Plaintiff's motion, and dismisses this case without prejudice for lack of subject matter jurisdiction.

"The APA only permits judicial review of an adverse agency decision where no other adequate remedy is available." *Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1290 (S.D. Fla. 2016); *see* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review." (emphasis added)); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016) ("[A]n agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court."); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("[Section] 704 does not provide additional judicial remedies in situations where . . . Congress has provided special and adequate review procedures." (quotation omitted)). Similarly, "[a] writ of mandamus will not be granted if alternative remedies

are available." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011); *see Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as codified in 28 U. S. C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief . . . ."); *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) ("Mandamus relief is only appropriate when . . . 'no other adequate remedy is available.'" (alteration adopted) (quoting *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980))). If an adequate alternative remedy exists, a court must dismiss APA and mandamus claims without prejudice for lack of subject matter jurisdiction. *See Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1314 (S.D. Fla. 2023) (dismissing a mandamus claim without prejudice for lack of subject matter jurisdiction because other claims "provide[d] an adequate remedy to [the p]laintiffs"); *Hogan*, 208 F. Supp. 3d at 1291 ("[T]he [c]ourt lacks jurisdiction over [the p]laintiff's claim under the APA[] because she has another adequate remedy available.").

Plaintiff has adequate alternative remedies. Under 8 U.S.C. § 1503(b), if two conditions are met, a person not located in the United States may apply for a certificate of identity to "travel[] to a port of entry in the United States . . . for admission" into the country. *Id.* As to the first condition, the applicant either must be "under sixteen years of age [and] born abroad of a United States citizen parent" or must have "been physically present in the United States" "at some time prior to" applying for the certificate. *Id.* As to the second condition, the applicant must "claim[] a right or privilege as a national of the United States" that is denied by an official of a department

or independent agency on "the ground that [the applicant] is not a national of the United States." *Id.* If these conditions are satisfied, the applicant may request a certificate of identity from "a diplomatic or consular officer of the United States in the foreign country in which [the applicant] is residing." *Id.* If the certificate is denied, section 1503(b) entitles the applicant to "an appeal to the Secretary of State, who, if he approves the denial, [must] state in writing his reasons for" doing so. *Id.* If the certificate is granted, section 1503(c) allows the certificate holder to seek "admission to the United States at any port of entry." 8 U.S.C. § 1503(c). Section 1503(c) also states: "A final determination by the Attorney General that [a certificate holder] is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise." *Id.*

Section 1503(b) applies to Plaintiff on the face of the complaint. (*See* Dkt. 1.) Plaintiff alleges that he is not located within the United States. (*See id.* at 12 (claiming that the denial of preliminary injunctive relief will result in his "prolonged stay outside" the United States).) He also alleges that he "ha[s] been a resident of Orlando, Florida[,] for at least [six] months prior to the filing of this case." (*Id.* at 3.) Thus, according to the complaint, Plaintiff has been physically present in the United States in the past. (*Id.*) Additionally, he claims that Defendants refused to issue him a United States passport on the ground that he did not sufficiently establish his United States citizenship. (*See id.* at 6–13.) In other words, Plaintiff claims a right as a United States citizen that was denied by department officials on the ground that he is not a United States citizen. *See* 8 U.S.C. § 1101(a)(21) (defining "national of the United States" to

include a United States citizen for purposes of section 1503).

Evidence admitted during the October 1, 2025 hearing supports the same conclusion. During the hearing, Plaintiff testified remotely from Brazil—showing that he is outside the United States—and he stated that he first came to the United States in December 2014—showing that he was present in the United States in the past. Plaintiff's removal documents corroborate these points. The warrant of removal indicates that Plaintiff entered the United States at Miami, Florida, on December 26, 2014, and the warning regarding the removal indicates that Plaintiff left the United States from Mesa, Arizona, on September 15, 2023. (Dkt. 67-2 at 3–4.) Plaintiff also testified that the Department of State denied his application for a United States passport because he did not establish the biological relationship necessary for United States citizenship. Letters in evidence corroborate this testimony. An official from the Department of State told Plaintiff in a March 13, 2023 letter that because Plaintiff "previously applied for a passport on March 8, 2022[,] but did not provide sufficient evidence of United States citizenship," the Department needs "additional documentation" in the form of DNA test results "to further establish [Plaintiff's] United States citizenship." (Dkt. 67-3 at 2.) Later, in a letter dated July 12, 2024, Mr. Astillero denied Plaintiff's application for citizenship services "for lack of acquisition of [United States] citizenship." (Dkt. 67-4 at 2.) Accordingly, both facially and factually, section 1503(b) applies to Plaintiff.

The processes set out in subsections (b) and (c) of section 1503 thus present an adequate alternative to Plaintiff's APA and mandamus claims. *See Hinojosa v. Horn*,

896 F.3d 305, 312 (5th Cir. 2018) (explaining that section 1503 "establishes an adequate alternative remedy in court" by "provid[ing] a direct and guaranteed path to judicial review"); *Hogan*, 208 F. Supp. 3d at 1291 (concluding that subsections (b) and (c) provide an adequate alternative remedy). In his response brief to Defendants' motion, Plaintiff argues that his removal from the United States renders section 1503 inadequate as to him because "if [he] is granted a certificate of identity instead of a [United States] passport, he will be detained upon arrival in a port of entry in the [United States] and then pursue his claim while detained." (Dkt. 45 at 2–3.) For this argument, Plaintiff relies entirely on *Rusk v. Cort*, 369 U.S. 367 (1962), *abrogated in part by Califano v. Sanders*, 430 U.S. 99 (1977), and on the Fifth Circuit's discussion of *Rusk* in *Hinojosa*, 896 F.3d 305. (*See* Dkt. 45 at 2–3.) However, Plaintiff does not mention *Hinojosa*'s "[t]wo preliminary points" about *Rusk*: (1) "it is unclear to what degree . . . *Rusk* remains good law" and (2) *Rusk* "never explicitly discusses the adequacy" of alternative remedies and "has rarely been relied on by either the Supreme Court" or the Fifth Circuit in that context. *Hinojosa*, 896 F.3d at 313. (*See* Dkt. 45 at 2–3.) Nor does Plaintiff address *Hinojosa*'s conclusion, (*see id.*), that because the plaintiffs in *Hinojosa* sought entry into the United States "on the basis of a claim of [United States] citizenship," they were "precisely the sort of persons that Congress, according to *Rusk*, was concerned to regulate" under subsections (b) and (c), and their "cases present[ed] the exact facts that the *Rusk* Court held would implicate . . . jurisdictional restrictions," *Hinojosa*, 896 F.3d at 314 (emphasis omitted);

*see Rusk*, 369 U.S. at 379 (first explaining that the subsections serve to eliminate an alien's opportunity "to gain fraudulent entry to the United States" through the prosecution of a "spurious citizenship claim[]" and then contrasting this purpose with the facts presented by the *Rusk* plaintiff, "who d[id] not try to gain entry to the United States *before* prevailing in [his] claim[] to citizenship"). The court finds *Hinojosa* persuasive and rejects Plaintiff's argument.

Further, as Defendants explain, the ongoing federal action in California supplies "another adequate avenue for Plaintiff to address issues regarding his claimed citizenship." (Dkt. 42 at 12.) Plaintiff testified that the court in that case is determining whether he is a United States citizen—an issue entangled with this case. As Plaintiff's injury in this case, the lack of a United States passport, stems from his reported failure to prove his United States citizenship, the California court can remedy the injury with its determination. Plaintiff has not persuasively explained why the California action does not present an adequate alternative remedy to his APA and mandamus claims, and the court concludes that it does. *See Washington Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993) (explaining that a plaintiff cannot pursue an APA claim if the plaintiff's "injury may be remedied in another action, even if that remedy would have no effect upon the challenged agency action" (cleaned up)); *Zadoorian v. Gwinnett Tech. Coll.*, No. 1:22-cv-00922-LMM, 2022 WL 22671506, at *6, 2022 U.S. Dist. LEXIS 250399, at *18 (N.D. Ga. Nov. 8, 2022) (citing *Washington Legal Found.*, 984 F.2d at 486), *aff'd*, No. 22-14206, 2024 WL 1554362, at *8, 2024 U.S. App. LEXIS 8634, at *24 (11th Cir. Apr. 10, 2024).

Because Plaintiff has adequate alternative remedies available to him, the court lacks subject matter jurisdiction over his APA and mandamus claims. *See Mafundu*, 699 F. Supp. 3d at 1314; *Hogan*, 208 F. Supp. 3d at 1291. The only other cause of action in the complaint, count three, asserts a claim for preliminary injunctive relief. (Dkt. 1 at 11–12.) However, "[a]ny motion or suit for an injunction must be based upon a cause of action; an injunction is a type of relief rather than an independent cause of action." *Spearman v. Wyndham Vacation Resorts, Inc.*, 69 F. Supp. 3d 1273, 1292 (N.D. Ala. 2014) (citing *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)). Count three is based upon counts one and two, which fail for lack of subject matter jurisdiction; consequently, count three also fails. *See Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 191 n.12 (10th Cir. 2025) (noting that counts for injunctive relief "predicated on [the plaintiff]'s federal and state antitrust claims" rose and fell "with those claims"); *Blackburn v. McPhail*, No. 5:23-cv-923-CLM, 2024 WL 2303734, at *4, 2024 U.S. Dist. LEXIS 90947, at *10 (N.D. Ala. May 21, 2024) ("[The plaintiff]'s request for injunctive relief is not an independent claim but rises and falls with the substantive counts."). To the extent that Plaintiff attempts to amend his complaint to add a count under 8 U.S.C. § 1503, he does so only by requesting amendment in, and attaching a defective proposed amended complaint to, his response brief. (*See* Dkt. 45 at 3, 6–7.) Such actions do not suffice. *See Davis-Harrison v. Chief U.S. Prob. Officer Middle Dist. of Fla.*, No. 22-14334, 2024 WL 2874046, at *2, 2024 U.S. App. LEXIS 13921, at *5 (11th Cir. June 7, 2024) ("[A] plaintiff cannot amend [a] complaint through a response to a

motion to dismiss, even if [the plaintiff] is 'proceeding pro se.'" (quoting *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022))).

Given the court's conclusion that it lacks subject matter jurisdiction over this case, Plaintiff cannot demonstrate a substantial likelihood of success on the merits for his motion for preliminary injunctive relief (Dkt. 46). *See Gibson v. Sec. & Exch. Comm'n*, Civil Action No. 1:19-cv-01014-WMR, 2019 WL 5698679, at *2, 2019 U.S. Dist. LEXIS 195250, at *4 (N.D. Ga. May 8, 2019) ("[T]he [c]ourt concludes that it lacks subject[ ]matter jurisdiction over this case, and, accordingly, that [the p]laintiff cannot show a substantial likelihood of success on the merits." (citing *Hill v. Sec. & Exch. Comm'n*, 825 F.3d 1236 (11th Cir. 2016))), *aff'd*, 795 F. App'x 753 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 1125 (2021). "[W]hen a plaintiff fails to establish a substantial likelihood of success on the merits, a court does not need to even consider the remaining . . . prerequisites" for preliminary injunctive relief. *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001). Consequently, the court denies Plaintiff's motion. *See Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 591 n.5 (11th Cir. 1997) ("Given its lack of subject matter jurisdiction, the district court . . . properly denied [the] motion for a preliminary injunction.").

## CONCLUSION

Accordingly:

1. Defendants' motion to dismiss (Dkt. 42) is **GRANTED**.

2. Plaintiff's motion for preliminary injunctive relief (Dkt. 46) is **DENIED**.

3. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

4. The Clerk is **DIRECTED** to terminate any pending motions and deadlines and to close this case.

**ORDERED** in Orlando, Florida, on October 9, 2025.

                                                  JULIE S. SNEED
                                                  UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties
Counsel of Record